People v. Jefferson With constables who are going to argue this matter, please approach the podium and identify yourselves and the party you're representing, please. Sean Collins Stapleton for the appellant. Sean Jefferson. Good morning, Your Honors. Assistant States Attorney Sarah McGann on behalf of the people. Okay, 15 minutes apiece, rebuttal. How much time do you want for rebuttal? Four minutes. Four minutes? Okay. And then just as a reminder, the microphone doesn't amplify, it's only for recording purposes. Understood. All right, thank you. You may proceed, counsel. Martin, may I please the court? Counsel. The post-conviction court should have granted an evidentiary hearing in this case because the post-conviction pleadings established that trial counsel was ineffective for failing to call two alibi witnesses at the second trial and for failing to impeach the state's occurrence witnesses with a police report stating that the robber had black hair when, in fact, Mr. Jefferson suffers from alopecia and cannot grow hair. I have a question, counsel. This is somewhat unusual because the trial, the first trial, the defendant was represented by the same lawyer as the second trial. Correct. Right? So it's kind of like at the second trial, counsel had the advantage because, you know, he or she already knew what might or might not work and what will work in the second trial, right? Correct. So are we really kind of looking at trial strategy here in terms of some of the witnesses that were called that were not called by counsel? What we know worked at the first trial was that the alibi witnesses were called and the result was a mistrial, a hung jury and a mistrial. But we don't know why the jury was hung, do we? Well, I think we have a very good guess that the state's witnesses testified that it was Mr. Jefferson who robbed them and the state's, I'm sorry, the defense's alibi witnesses said that Mr. Jefferson was at the Moseby's home. So at least one or more jurors determined that the state had not met its burden. So you want us to make a decision based on a guess? No, Your Honor. I want, I would like this Court to follow this Court's precedent and take Upshaw and Cleveland and to hold that when the evidentiary hearing is warranted, when the record does not show why defense counsel did not present the sculptural evidence that counsel was aware of. And here, of course, counsel was clearly aware of these alibi witnesses. Well, maybe he thought that the reason the jury got hung was because he called the alibi witnesses and they put the defendant at the scene of the crime on the day of the crime, right? Well, before the robbery, their testimony that they went to the liquor store, correct. But counsel knew that and presented them anyway. And again, the result was for the defense, a successful trial in that they hung the jury. And once you've hung a jury as a defense attorney, you should be very careful about changing that strategy. So you mentioned the Tate case. What was the other case? Tate. Cleveland and Upshaw are all cases where, again, when there is no evidence in the record for why counsel did not present a sculptural evidence, an evidentiary hearing is required to determine whether that decision not to present that evidence was correct for strategy. But in Tate, aren't we talking about something completely different in terms of the facts? Because in Tate, it was more about the defense counsel attacking the credibility of the witnesses instead of putting on the sculptural witnesses? Putting on alibi witnesses, which is what the defense strategy was at the second trial. It's the same, it's really the same facts. In all those cases, there were alibi witnesses available and counsel, for whatever reason, did not call them. And the courts in those cases correctly ruled or held, I should say. So in this trial, though, it's the same defense counsel, right? So that lawyer got to see how the witnesses testified in court. So could it possibly be trial strategy to think, okay, we didn't get an acquittal the first time around, and maybe it's because of these two alibi witnesses who didn't testify the way they evaluated them during the first trial. So is it really that unreasonable to not call them during the second trial? The most important question in this case, really, is why counsel did not call them during the second trial. And we simply do not know. We simply do not know why counsel didn't call them. You could assume it's trial strategy, but you shouldn't, because the answer to that question should be answered at an evidentiary hearing. So we should put that lawyer on the stand and ask him. That's right. Why didn't you call those, that mom and daughter? Right. That's exactly right. And that's what Tate, Upshaw, and Cleveland hold, that this question can't be resolved on the pleadings alone, whether it's trial strategy or neglect. That has to be answered at an evidentiary hearing. Oh, I have a question. And Tate, didn't we find that, in the record, didn't reflect the trial counsel's decision in terms of the strategy utilized here? Was it professionally reasonable or a tactical decision? So isn't that the same thing here? Well, it wasn't. I mean, it wasn't reasonable to not call the alibi witnesses in Tate, right? I mean, that's, that was the holding in Tate. But here we did have alibi witnesses though, right? Right. Presented at one trial, but not the other. So we're, you know, we're put back in the position of Tate, Upshaw, and Cleveland, where counsel was aware of exculpatory witnesses, clearly. Counsel didn't present them. And so, again, under those cases, to resolve whether it's strategy or neglect, you have to hold a hearing. During the first trial, it's my understanding that the defense counsel had two theories. One of them was misidentification, and I forgot what the other one was, but... Was alibi. Okay. But then on the second trial, counsel decided to go solely with misidentification. Correct. Okay. So, are we just talking about trial strategy here again? Well, again, we just don't know, right? I mean, before, between the two trials, counsel requested a continuance, because one of the alibi witnesses was not available. And counsel called that witness necessary for the defense. So that's the last word we hear from counsel. Counsel is saying the witness was necessary to the defense. And the next thing we know, the second trial, the witness is not called. That's a substantial question of whether, again, there was strategy or not. If there was not, it was an effective assistance. So is there a presumption that counsel was negligent? We don't know. There's no presumption here. At all, right? It was just, it's just, we don't know. We simply don't know. And under those cases, again, Tate, Upshaw, and Cleveland, we don't know. So a hearing is required. Right. But again, going back to trial strategy, since we have a lawyer that's tried the case twice, right, and given the opportunity to try the case the second time, viewing it from sort of retrospectively, right, in terms of what trial counsel thought might work and might not work. Again, we're still talking about trial strategy. Yeah. And counsel, again, said this was a necessary witness between the two trials. So what happened? Why did this witness suddenly not become necessary? Counsel changed his mind? Well, we don't know. We do not know. So how are we supposed to base a decision on don't know? Well, again, you say that when there's no explanation in the record for the decision, this is Tate, this is Upshaw, this is Cleveland, when there is no explanation in the record for why counsel made this decision. And it could be either ineffectiveness or it could be strategy. You have to hold an evidentiary hearing. And that's all we're asking for here is a hearing to determine why these witnesses weren't called and why counsel did not impeach the occurrence witnesses of this police report. Anything else? No, Your Honor. It's just, again, I ask you to vacate the dismissal of the case. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Again, Assistant State's Attorney, Sarah McGann, on behalf of the people. Your Honors, this Court should affirm the trial court's dismissal of Petitioner's Petition at the second stage of proceedings, as this Court has just aptly pointed out. The first trial here, it did not end in an acquittal. It ended in a hung jury and thus was a mistrial. So the assumption that we had jurors swayed only to find defendant innocent because, you know, of counsel's position is not completely accurate. I think that we can take that hung jury as because we had the that, you know, remarkable sort of circumstances to look back on the first trial and say, what can I do different to strengthen this misidentification defense? Did, in fact, then remove their testimony. And that testimony... Is that speculation, though? Like, what about his point that we don't know why these witnesses were called? Is there some sort of obligation on defense counsel to state at some point why these witnesses were not called? Sure. And, Your Honor, I think because we have the two trials and because the presumption is that trial counsel employed reasonable trial strategy, it's a real safe inference that counsel examined what he did at the first trial and decided to ditch that weak alibi defense, which was certainly not, you know, an ironclad defense. If you look at their testimony, it's very vague, very elusive. As Your Honor pointed out, it places defendant right there at the liquor store, which is adjacent to the restaurant where the armed robbery occurred. So... How do you reconcile that with the misidentification theory, then? If you have them placed at the site where the offense occurred, then how do you reconcile that with misidentification? Sure. I think it would have bolstered the prosecution's case with these really strong identifications from the four witnesses. I mean, we have a, you know, defendant that returns to the scene of the crime days later, and those two employees happen to be, well, one happens to be working there, identifies the defendant right away, you know, the police come and they call the other victim an eyewitness, and she also is able to identify the defendant. So these are really strong identifications. We have the victim, Michael Kowicki, who he makes an in-court identification, but his description there on the scene to the police officers following the crime is, you know, it's in conjunction with the other descriptions, which is defendant was wearing a black hooded sweatshirt, fair-skinned, tall, six feet, 6'1", 200 pounds. I think it's just the store clerk who said the hood was down, and that makes sense, because that's when the failed liquor purchase occurs, and that clerk hears, you know, the defendant say, the petitioner say that there's going to be a stick-up, and then we have the other three witnesses observe defendant with the hood on and give those descriptions. They're consistent and they're solid. So I think, Your Honor, to your point about the misidentification, if we then add in the Mosby's testimony, it's really only going to help the alibi witnesses. Sure. Based upon your theory, then, why did defense counsel ask for a continuance due to the unavailability of one of the witnesses shortly before the second trial got underway? Certainly, that could be just a trial tactic to really weigh the benefits of calling them. So I know that they, that counsel mentioned she had just had a baby or there was, you know, some impending baby or pregnancy, but perhaps counsel was taking the time to really determine if their testimony was going to help petitioner's case. Just out of curiosity, so the defense counsel decides in the second trial to change a little bit of the strategy going in. What about the state? Did the state change their strategy at all when they went into the retrial? Your Honor, I believe the state called the same witnesses, the two detectives and the four eyewitnesses. The defense counsel called petitioner and the Mosby's at the first trial and then at the second trial just Officer Wilson. So no, other than I think that we did call some rebuttal witnesses, so I know I would say the state did not change, you know, their theory and their approach in poking holes at petitioner's overall defense, which was misidentification. I mean, I think we can really assume with this weak alibi defense that that was sort of subsumed in the misidentification and it wasn't going to overcome, again, those strong four eyewitness descriptions and but it did raise the issue about the color of the hair. Sure. Which involves Officer Wilson's report. Yes. All right. So again, trial strategy or ineffectiveness of counsel? Your Honor, it's interesting because counsel attempts to go into this report and this is an initial incident report. So we have Officer Wilson, who's a patrolman, who responds to a dispatch. So he's responding. You can look at the report. It's really just cursory notes. It's pretty empty, if you will. I think there's two witnesses he spoke to and this hair color is a check the box, if you will, a proverbial check the box. Certainly puts BLK there. But I would point out he's the first officer on the scene. He is talking to witnesses who have described defendant wearing a black hood. So there, you know, may be sort of that association there. Regardless, counsel tried to go into this report and it was deemed inadmissible by the trial court because it was inadmissible hearsay. But that was only stymied by the trial court. I would point out that trial counsel, you know, did extensively cross-examine all of the state's witnesses. So that does not sort of deflect from the adversarial testing. He or she both did that. And then also, counsel was able to do a thorough direct examination with Officer Wilson despite that report. The report is not very helpful and it's certainly not strong impeachment here where you have these consistent, again, descriptions and identifications. So the impeachment would be weak, if any. So counsel raised Tate and King. Any response to the applicability of those cases to this case? Sure. Your Honor, I think that counsel said there's no evidence in the record here. But again, this is really sort of remarkable because we have two trials. So I would, you know, just emphasize it's the state's position that counsel had the, he had that ability to reflect upon the first trial and sort of realize that, again, this was not a straight acquittal. What can I do different? How can I zero in on this misidentification defense? How is it weakened? And he decided to remove, likely remove, the Mosby's, again, very elusive, vague testimony and really hone in on how he could weaken the identifications of Petitioner, which, albeit unsuccessfully, you can see through the testimony of those four witnesses why. So for those reasons, and I don't know if you want me to go into prejudice here, but I think I sort of touched upon the fact that we have really strong eyewitness descriptions and the people's brief, I would ask that you affirm the trial court's ruling here. Any other questions? Thank you, Your Honor. Appreciate it. The state called the identifications strong. And that's true. And to counter those at the first trial, counsel presented an alibi defense. And that alibi defense led the jury to deliberate late into the evening, so late that the court excused them for the night. When they returned in the morning, the court gave them a prim instruction. And even then, they could not reach a verdict. They could not decide that the state met its burden. And for defense counsel, with, as the state says, facing these strong identifications, to abandon that defense and not present the alibi, which resulted in very quick deliberations that convicted my client, that is ineffective assistance. What about counsel's point about that defense counsel did cross-examine all the witnesses the state presented and did a very admirable job at cross-examination? At both trials. And look, my client's in prison. My client was convicted without the alibi witnesses. That's ineffective assistance. Even in hindsight, if defense counsel's strategy might have been wrong, does that necessarily rise to the level of ineffective assistance? Well, I think on this record, it certainly does. We have a hung jury, and we have a quick conviction. And if there is some reasonable trial strategy that explains that, that has to be convicted. But the record is telling us to why the jury's hung, right? We don't know if it was just... Well, we have a pretty good sense, right? When one person who just wasn't paying attention... The alibi witnesses were the difference between the two trials. The state presented virtually the same case. Well, the jurors were different, were they not? Their jurors were different, but, you know, juries... Could be a pretty big difference. Could be helpful. Or it might not. We don't know. And that's why an evidentiary hearing is required. All right. No more questions? Thank you. Thank you. All right. Thank you, counsels. For a long-argued matter, and we'll take it under advisement.